IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WENDY MINTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 cv 2050 |
| | ) | Judge Shadur |
| G&D INTEGRATED DISTRIBUTION, INC., | ) | Magistrate Judge Cox |
| | ) | |
| Defendant. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendant, G&D Integrated Distribution, Inc. (G&D), by and through its attorneys, Kearney W. Kilens, Hope G. Nightingale and Laura L. Milnichuk, Litchfield Cavo LLP of counsel, responds to the Plaintiff's Complaint and asserts its Affirmative Defenses against Plaintiff as follows:

### PRELIMINARY STATEMENT

1. This action seeks redress for the violation of rights guaranteed to Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff seeks mandatory injunctive relief and damages to redress discriminatory employment practices engaged in by Defendant.

**ANSWER:** Defendant G&D admits that Plaintiff is attempting to assert a claim pursuant to Title VII, but denies that it committed any unlawful or discriminatory employment practice or that plaintiff is entitled to any relief under the cited statutes or any other basis.

### JURISDICTIONAL STATEMENT

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 to secure protection of and to redress deprivation of rights secured by 42 U.S.C. §§ 2000e et seq. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**ANSWER:** Defendant G&D does not contest the jurisdiction of this Court, but denies that plaintiff is entitled to any relief under any of the cited statutes or any other basis.

## VENUE

3.  Venue is proper under 28 U.S.C. § 1391(b)(1) and (2).

**ANSWER:** Defendant G&D does not contest the venue of this Court, but denies that plaintiff is entitled to any relief under any of the cited statutes or any other basis.

## PARTIES

4.  Plaintiff, WENDY MINTER, is a female United States citizen who resides in Illinois.

**ANSWER:** Defendant G&D admits the allegations contained in paragraph 4.

5.  Defendant, G&D INTEGRATED DISTRIBUTION, INC., is an Illinois corporation which has continuously and does now employ more than fifteen employees, and at all relevant times did, and continues to do business in Illinois. Defendant is engaged in an industry that affects commerce and is an employer for purposes of 42 U.S.C. § 2000e(b).

**ANSWER:** Defendant G&D admits the allegations contained in paragraph 5.

## PROCEDURE

6.  Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on January 18, 2008, at which time Plaintiff requested a Notice of Right to Sue. The EEOC issued Plaintiff a Notice of Right to Sue on April 1, 2008, which Plaintiff received on April 7, 2008. The Notice of Right to Sue entitles Plaintiff to initiate a civil action in the appropriate forum within ninety (90) days of receipt of said Notice. Plaintiff initiated this action within said ninety (90) day period. Following Defendant's termination of Plaintiff's employment, an additional charge of discrimination was filed on February 26, 2008, at which time Plaintiff requested a Notice of Right to Sue. The EEOC issued Plaintiff a Notice of Right to Sue, relative to the February 26, 2008 charge, on March 4 , 2008, which Plaintiff received on March 6, 2008. The Notice of Right to Sue entitles Plaintiff to initiate a civil action in the appropriate forum within ninety (90) days of receipt of said Notice. Plaintiff initiated this action within said ninety (90) day period.

**ANSWER:** Defendant G&D admits that, sometime after January 18, 2008, it received a copy of Charge of Discrimination No. 846-2008-30236 filed by plaintiff against it on or about January 18, 2008, and that it received a copy of a Notice of Right to Sue issued by the EEOC for that Charge dated April 1, 2008. G&D also admits that, sometime after February 26, 2008, it received a copy of a second Charge of Discrimination No. 440-2008-03297, filed by plaintiff against it on or about February 26, 2008, and that it received a copy of a Notice of Right to Sue issued by the EEOC for that Charge dated March 4, 2008. G&D further admits plaintiff has summarized the "90 day" provisions contained in the Notices of Right to Sue accurately and that this Complaint was filed on April 10, 2008, which is within 90 days of the date of both Notices of Right to Sue. G&D also admits that plaintiff was terminated effective February 13, 2008. Defendant G&D does not have information sufficient to form a belief as to the remaining allegations contained in paragraph 6 and therefore denies them.

7. Paragraphs one (1) through six (6) are incorporated by reference as if fully set out herein.

**ANSWER:** Defendant G&D readopts and incorporates by reference its responses to Paragraphs one (1) through six (6) above as if fully set forth herein.

8. Plaintiff began working for Defendant's predecessor in August 2001 as a Fork Lift Operator, and in approximately 2004 was promoted to the position of Lead Person.

**ANSWER:** Defendant G&D admits that plaintiff began working for CDO, a predecessor in interest to G&D, on or about August 20, 2001 as a fork truck operator, and that she was promoted to the position of Lead Person effective April 19, 2004.

3

9. Throughout her six and one-half (6.5) year career with Defendant, Plaintiff has performed to and in excess of Defendant's reasonable satisfaction at any times material hereto, as evidenced by, without limitation. Plaintiff's excellent performance evaluations, merit-based raises, bonuses, promotion, and complementary [sic] messages from Defendant's customers, and any assertion to the contrary is a pretext for discrimination.

**ANSWER:** Defendant G&D admits that plaintiff received generally favorable performance reviews, merit increases, bonuses, and complimentary messages from Defendant's customers from time to time during her employment, as well as a promotion to lead person in April 2004. Defendant G&D denies that plaintiff's performance always met or exceeded expectations, as evidenced by various incidents which occurred during the last six months of her employment with G&D, and further denies that these incidents or any assertions made by G&D regarding them are a pretext for discrimination.

10. Throughout her career, Plaintiff has been assigned to the Oswego location. During her career as Lead Person for Defendant, Plaintiff was the only female Lead Person at the Oswego location.

**ANSWER:** Defendant G&D admits that plaintiff was assigned to the Oswego location for part of her tenure, but denies the remaining allegations contained in paragraph 10.

11. In approximately June 2007, Plaintiff was placed under the supervision of Chris Downs, Operations Manager. Since her assignment to Operations Manager Downs, Plaintiff has been harassed and held to a higher standard in the terms and conditions of her employment than her similarly situated male co-workers. Examples of such disparate treatment follow.

**ANSWER:** Defendant G&D admits that Chris Downs was promoted to General Supervisor in approximately June 2007, and that one of his responsibilities was to supervise plaintiff. Defendant G&D denies the remaining allegations contained in paragraph 11.

12. In contrast to Plaintiff, who performed the same duties and had the same responsibilities, on information and belief Defendant compensated its male Lead Persons higher than Plaintiff, including Jim Clark, Rodney Hayden, and Bob Diesburg.

4

**ANSWER:** Defendant G&D admits that Jim Clark and Rodney Hayden were or currently are being compensated at an hourly rate that is higher than plaintiff had was when she held the position of Lead, but affirmatively states that the reasons for the differences in compensation are unrelated to gender. G&D denies the remaining allegations contained in paragraph 12.

13. Since June 2007, Operations Manager Downs has harassed Plaintiff in a manner that was detrimental to her professional career with Defendant by isolating Plaintiff, speaking to her in a demeaning manner, spreading false allegations about Plaintiff, and constantly spying and monitoring Plaintiff in a manner not afforded to male employees.

**ANSWER:** Defendant G&D denies the allegations contained in paragraph 13.

14. In contrast to Plaintiff, Operations Manager Downs will regularly converse and engage in playful activities with his subordinate male employees.

**ANSWER:** Defendant G&D admits that General Supervisor Downs regularly conversed with all his subordinate employees. G&D denies the remaining allegations contained in paragraph 14.

15   Due to the continuing harassment and disparate treatment, in approximately December 2007, Plaintiff contacted Kim Kirk, Human Resources, and Mark Rios, Warehouse Supervisor, to report her supervisor's gender discrimination. Plaintiff specifically reported that Operations Manager Downs was harassing Plaintiff in a disparate manner than her male co-workers.

**ANSWER:** Defendant G&D admits that discussions took place between plaintiff, Kim Kirk, Human Resources, and Mark Rios, Warehouse Supervisor, beginning in late November or early December 2007, regarding (a) criticisms plaintiff had about Downs' ability to manage the department and (b) complaints from co-employees that plaintiff was disrupting the workplace with her negative attitude, her unprofessional remarks about Downs' ability to manage the department, and statements that she intended to get him

5

fired. Defendant G&D denies that these complaints were based on "gender discrimination" and affirmatively states that she did not characterize them that way until mid-January 2008, at or about the time she filed her first charge of discrimination. G&D denies the remaining allegations contained in paragraph 15.

16. Despite the very specific evidence and examples Plaintiff provided of gender discrimination, Defendant took no action to address Plaintiff's complaints or to rectify the disparate treatment.

**ANSWER:** Defendant G&D denies the allegations contained in paragraph 16.

17. As a result of Defendant's lack of addressing Plaintiff's complaints, Operations Manager Downs accelerated his harassment against Plaintiff, including loudly berating Plaintiff in the presence of her subordinate employees and sending Plaintiff home before the end of her shift for no reason or explanation.

**ANSWER:** Defendant G&D admits that plaintiff was sent home before the end of her shift, with specific reason and explanation and with pay, on November 28, 2007. G&D denies the remaining allegations contained in paragraph 17.

18. Rather than to continue to endure Defendant's hostile and discriminatory work environment, in a meeting in December 2007 with Operations Manager Downs, Human Resources Kirk, and Mark Rios, Warehouse Manager, Plaintiff informed Defendant that she was forced to step down from the position as Lead Person to the non-supervisory role of Material Handler due to Downs' continued harassment and disparate treatment.

**ANSWER:** Defendant G&D admits that, against its urging to the contrary, plaintiff voluntarily decided to step down from her position as Lead Person in December 2007 in the wake of several complaints about her demeanor from several of her subordinates. Defendant G&D further admits that this subject was discussed at a meeting on December 3, 2007 with Kim Kirk (by telephone), Chris Downs, Mark Rios, John Wysoki and plaintiff. Defendant G&D denies the remaining allegations contained in paragraph 18.

19. Defendant's failure to take any action to alleviate the hostile and discriminatory work environment resulted in a constructive demotion of Plaintiff's employment.

**ANSWER:** Defendant G&D denies the allegations contained in paragraph 19 and moves to strike plaintiff's allegations of "constructive demotion" for failure to state a claim upon which relief may be granted.

20. As a prerequisite for the demotion, Defendant further required Plaintiff to participate in their Employee Assistance Program for anger management counseling.

**ANSWER:** Defendant G&D denies that plaintiff was demoted. G&D admits that its Human Resources representative Kim Kirk encouraged plaintiff to take advantage of counseling offered free of charge through G&D's Employee Assistance program. G&D denies that plaintiff was "required" to participate in the EAP or that it was a "prerequisite" for anything, much less for plaintiff's decision to voluntarily step down from her position as Lead. G&D denies the remaining allegations contained in paragraph 20.

21. Following the constructive demotion of Plaintiff's employment, Defendant replaced Plaintiff's position, duties, and responsibilities as a Second Shift Lead Person with Rodney Hayden, a male employee.

**ANSWER:** Defendant G&D admits that Rodney Hayden, a male employee, was promoted to Second Shift Lead Person following plaintiff's voluntary resignation of that position in December 2007. G&D denies the remaining allegations contained in paragraph 21 and moves to strike plaintiff's reference to "constructive demotion" for failure to state a claim upon which relief may be granted.

22. On February 12. 2008, Plaintiff left work on her break to place ice on her thumb, which she had previously strained at home while moving boxes. Plaintiff returned to work by the end of her break and completed the remainder of her shift without incident or accident.

**ANSWER:**   Defendant G&D admits that both plaintiff and her co-worker, Christine Donaldson, reported to G&D on February 12, 2008 that plaintiff had injured herself at work that day.  G&D further admits that, following Donaldson's report of the injury and statement that plaintiff needed ice, plaintiff was observed with her hand wrapped in gauze and wincing in pain.  G&D admits, on information and belief, that plaintiff may have gone home during her lunch hour and iced her injury.  Defendant G&D affirmatively states that plaintiff was asked to provide information about the injury for a workplace accident/incident report and to take a post-accident drug test.  Plaintiff described what happened, but declined to leave work to seek medical treatment and refused to take a post-accident drug test.  Defendant G&D does not have information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 22 and therefore denies them.

23.   As Plaintiff was preparing to leave at the end of her shift, Operations Manager Downs approached her and ordered Plaintiff to take a drug test based on her thumb injury.

**ANSWER:**   Defendant G&D admits that General Supervisor Downs told plaintiff at approximately 9 p.m. that she needed to take a post accident/injury drug test.  G&D denies the remaining allegations contained in paragraph 23.

24.   Defendant's policies and procedures require a drug test if there is an injury on the job which requires medical attention, and states that an employee may be subject to a drug test if they are involved in a job-related accident.

**ANSWER:**   Defendant G&D admits that it has a written policy and procedure regarding drug testing, and denies that plaintiff has accurately or completely quoted that policy in paragraph 24.

25.   As Plaintiff's injury did not require medical attention and was not job-related, Plaintiff protested the order.

**ANSWER:** Defendant G&D admits that plaintiff refused to submit to the drug test as required by its policy and walked off the jobsite. G&D denies the allegations in paragraph 25 to the extent that they contradict her prior statements that she injured herself on the job on February 12, 2008. Defendant G&D affirmatively states that plaintiff was told on February 12, 2008 that she should obtain medical attention for her injury, but that she refused to do so.

26. In response, Operations Manager Downs immediately terminated Plaintiff's employment, stating "I take it this is your resignation", and escorted her out of the premises. Three days later, on February 15, 2008, Defendant called to communicate that her employment had been officially terminated.

**ANSWER:** Defendant G&D admits that General Supervisor Downs said words to the effect of "I take it this is your resignation" to plaintiff after she refused to take the drug test and was walking off the jobsite. G&D denies that plaintiff was escorted off the premises or that Downs immediately terminated plaintiff's employment. G&D admits that plaintiff was officially informed on February 15, 2008, that her employment was terminated effective February 13, 2008.

27. In contrast to Plaintiff, numerous other male employees have been involved in serious on the job accidents yet have not been required to submit to a drug test, or terminated for their purported failure to do so, including Greg Kennedy and Tim Ryan.

**ANSWER:** Defendant G&D denies the allegations contained in paragraph 27.

28. The aforementioned acts and omissions of Defendant constitute unlawful and willful discrimination against Plaintiff based on her gender, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

**ANSWER:** Defendant G&D denies the allegations contained in paragraph 28.

29. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and foregone wages and benefits.

**ANSWER:** Defendant G&D denies the allegations contained in paragraph 29.

## COUNT II - TITLE VII- RETALIATION

30.     Paragraphs one (1) through fourteen (14) are incorporated by reference as if fully set out herein.

**ANSWER:**   Defendant G&D Defendant G&D readopts and incorporates by reference its responses to Paragraphs one (1) through fourteen (14) above as if fully set forth herein.

31.     Due to the continuing harassment and disparate treatment, in approximately December 2007, Plaintiff contacted Kim Kirk, Human Resources, and Mark Rios, Warehouse Supervisor, to report her supervisor's gender discrimination. Plaintiff specifically reported that Operations Manager Downs was harassing Plaintiff in a disparate manner than her male co-workers.

**ANSWER:**   Defendant G&D admits that discussions took place between plaintiff, Kim Kirk, Human Resources, and Mark Rios, Warehouse Supervisor, beginning in late November or early December 2007, regarding (a) criticisms plaintiff had about Downs' ability to manage the department and (b) complaints from co-employees that plaintiff was disrupting the workplace with her negative attitude, her unprofessional remarks about Downs' ability to manage the department, and statements that she intended to get him fired.  Defendant G&D denies that these complaints were based on "gender discrimination" and affirmatively states that she did not characterize them that way until mid-January 2008, at or about the time she filed her first charge of discrimination. G&D denies the remaining allegations contained in paragraph 31.

32.     Despite the very specific evidence and examples Plaintiff provided of gender discrimination, Defendant took no action to address Plaintiff's complaints or to rectify the disparate treatment.

**ANSWER:**   Defendant G&D denies the allegations contained in paragraph 32.

33.     As a result of Defendant's lack of addressing Plaintiffs complaints, Operations Manager Downs accelerated his harassment against Plaintiff, including loudly

berating Plaintiff in the presence of her subordinate employees and sending Plaintiff home before the end of her shift for no reason or explanation.

**ANSWER:** Defendant G&D admits that plaintiff was sent home before the end of her shift, with specific reason and explanation and with pay, on November 28, 2007. G&D denies the remaining allegations contained in paragraph 33.

34. Rather than to continue to endure Defendant's hostile and discriminatory work environment, in a meeting in December 2007 with Operations Manager Downs, Human Resources Kirk, and Mark Rios, Warehouse Manager, Plaintiff informed Defendant that she was forced to step down from the position as Lead Person to the non-supervisory rote of Material Handler due to Downs' continued harassment and disparate treatment.

**ANSWER:** Defendant G&D admits that, against its urging to the contrary, plaintiff decided to step down from her position as Lead Person in December 2007 in the wake of several complaints about her demeanor from several of her subordinates. Defendant G&D further admits that this subject was discussed at a meeting on December 3, 2007 with Kim Kirk (by telephone), Chris Downs, Mark Rios, John Wysoki and plaintiff. Defendant G&D denies the remaining allegations contained in paragraph 34.

35. Defendant's failure to take any action to alleviate the hostile and discriminatory work environment resulted in a constructive demotion of Plaintiff's employment.

**ANSWER:** Defendant G&D denies the allegations contained in paragraph 35 and moves to strike plaintiff's allegations of "constructive demotion" for failure to state a claim upon which relief may be granted.

36. As a prerequisite for the demotion, Defendant further required Plaintiff to participate in their Employee Assistance Program for anger management counseling.

**ANSWER:** Defendant G&D denies that plaintiff was demoted. G&D admits that its Human Resources representative Kim Kirk encouraged plaintiff to take advantage of counseling offered free of charge through G&D's Employee Assistance program. G&D

denies that plaintiff was "required" to participate in the EAP or that it was a "prerequisite" for anything, much less for plaintiff's decision to voluntarily step down from her position as Lead. G&D denies the remaining allegations contained in paragraph 36.

37. Following the constructive demotion of Plaintiff's employment, Defendant replaced Plaintiff's position, duties, and responsibilities as a Second Shift Lead Person with Rodney Hayden, a male employee who did not engage in statutorily protected activity.

**ANSWER:** Defendant G&D admits that Rodney Hayden, a male employee, was promoted to Second Shift Lead Person following plaintiff's voluntary resignation of that position in December 2007. G&D denies the remaining allegations contained in paragraph 37 and moves to strike plaintiff's reference to "constructive demotion" for failure to state a claim upon which relief may be granted.

38. As a result of Defendant's lack of addressing Plaintiff's complaints, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on January 18, 2008, complaining of gender discrimination and retaliation.

**ANSWER:** Defendant G&D admits that plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on or about January 18, 2008, complaining of gender discrimination and retaliation, but denies that the Charge has merit and further denies the remaining allegations contained in paragraph 38.

39. Plaintiff engaged in statutorily protected conduct under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., based on her opposition to and reporting of Defendant's discriminatory conduct towards female employees.

**ANSWER:** Defendant G&D denies the allegations contained in paragraph 39.

40. In close proximity to the filing of her charge of discrimination, Defendant initiated a series of events that led to the termination of Plaintiff's employment.

**ANSWER:** Defendant G&D denies the allegations contained in paragraph 40.

41. On February 12, 2008, Plaintiff left work on her break to place ice on her thumb, which she had previously strained at home while moving boxes. Plaintiff returned

to work by the end of her break and completed the remainder of her shift without incident or accident.

**ANSWER:** Defendant G&D admits that both plaintiff and her co-worker, Christine Donaldson, reported to G&D on February 12, 2008 that plaintiff had injured herself at work that day. G&D further admits that, following Donaldson's report of the injury and statement that plaintiff needed ice, plaintiff was observed with her hand wrapped in gauze and wincing in pain. G&D admits, on information and belief, that plaintiff may have gone home during her lunch hour and iced her injury. Defendant G&D affirmatively states that plaintiff was asked to provide information about the injury for a workplace accident/incident report and to take a post-accident drug test. Plaintiff described what happened, but declined to leave work to seek medical treatment and refused to take a post-accident drug test. Defendant G&D does not have information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 41 and therefore denies them.

42. As Plaintiff was preparing to leave at the end of her shift, Operations Manager Downs approached her and ordered Plaintiff to take a drug test based on her thumb injury.

**ANSWER:** Defendant G&D admits that General Supervisor Downs told plaintiff at approximately 9 p.m. that she needed to take a post accident/injury drug test. G&D denies the remaining allegations contained in paragraph 42.

43. Defendant's policies and procedures require a drug test if there is an injury on the job which requires medical attention, and states that an employee may be subject to a drug test if they are involved in a job-related accident.

**ANSWER:** Defendant G&D admits that it has a written policy and procedure regarding drug testing, and denies that plaintiff has accurately or completing quoted that policy in paragraph 43.

44. As Plaintiff's injury did not require medical attention and was not job-related, Plaintiff protested the order.

**ANSWER:** Defendant G&D admits that plaintiff refused to submit to the drug test as required by its policy and walked off the jobsite. G&D denies the allegations in paragraph 44 to the extent that they contradict her prior statements that she injured herself on the job on February 12, 2008. Defendant G&D affirmatively states that plaintiff was told on February 12, 2008 that she should obtain medical attention for her injury, but that she refused to do so.

45. In response, Operations Manager Downs immediately terminated Plaintiff's employment, stating "I take it this is your resignation", and escorted her out of the premises. Three days later, on February 15, 2008, Defendant called Plaintiff to communicate that her employment had been officially terminated.

**ANSWER:** Defendant G&D admits that General Supervisor Downs said words to that effect of "I take it this is your resignation" to plaintiff after she refused to take the drug test and was walking off the jobsite. G&D denies that plaintiff was escorted off the premises or that Downs immediately terminated plaintiff's employment. G&D admits that plaintiff was officially informed on February 15, 2008, that her employment was terminated effective February 13, 2008.

46. In contrast to Plaintiff, numerous other male employees have been involved in serious on the job accidents yet have not been required to submit to a drug test, or terminated for their purported failure to do so, including Greg Kennedy and Tim Ryan.

**ANSWER:** Defendant G&D denies the allegations contained in paragraph 46.

47. Any reasons proffered by Defendant for terminating Plaintiffs employment are pretext for retaliating against Plaintiff because of her complaints of gender discrimination.

**ANSWER:** Defendant G&D denies the allegations contained in paragraph 47.

48. The aforementioned acts and omissions of Defendant constitute unlawful retaliation against Plaintiff based on her opposition to the creation of a discriminatory work

environment in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

**ANSWER:**　Defendant G&D denies the allegations contained in paragraph 48.

49.　As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and foregone wages and benefits.

**ANSWER:**　Defendant G&D denies the allegations contained in paragraph 49.

### JURY TRIAL DEMAND

50.　Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this Complaint.

**ANSWER:**　Defendant G&D denies the existence of triable issues of fact or law, but acknowledges plaintiff's right to assert a demand for a trial by jury at this stage of the litigation.

### AFFIRMATIVE DEFENSES

A.　Plaintiff is barred from relief to the extent that she has failed to mitigate her damages.

B.　Plaintiff cannot establish that she suffered any materially adverse tangible employment action as a result of any alleged discriminatory conduct by Defendant G&D.

C.　Plaintiff cannot establish that she suffered any materially adverse action at any time up to and including February 15, 2008, as a result of any alleged retaliatory conduct by Defendant G&D.

D.　Defendant G&D exercised reasonable care to prevent and correct promptly any alleged harassing or retaliatory behavior in accordance with its established policies and procedures by immediately investigating and taking remedial action for the

all complaints by or about plaintiff as soon as it had knowledge of them.

E. Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

F. Defendant G&D had a legitimate, non-discriminatory, non-retaliatory reason to terminate plaintiff's employment following her willful violation of G&D's Drug and Alcohol Testing Policy which states, in pertinent part in bold text: **"Employees who refuse to submit to drug and/or alcohol testing will be terminated."**

G. Plaintiff is not entitled to punitive damages because of Defendant G&D's good faith efforts to enforce its non-discrimination policies.

H. Plaintiff has failed to state a claim for "constructive demotion" upon which relief may be granted.

For all the reasons stated herein, Defendant G&D requests that the Court dismiss this matter with prejudice and award it the costs and attorneys' fees it incurred in the defense of this action.

DATE: May 8, 2008

           s/Kearney W. Kilens
           Kearney W. Kilens

Kearney W. Kilens (Attorney I.D. 6190877)
Hope G. Nightingale (Attorney I.D. 6184864)
Laura L. Milnichuk (Attorney I.D. 6286880)
Litchfield Cavo LLP
303 W. Madison Street, Suite 300
Chicago, IL  60606
312-781-6686
312-781-6630 (fax)
Email:  kilens@litchfieldcavo.com